**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERRY H., | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 cv 3652 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| ANDREW M. SAUL, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Terry H.[1] ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff has filed a Memorandum in Support of Reversing the Decision of the Commissioner of Social Security [dkt. 21], which the Court will construe as a motion for summary judgment. The Commissioner has filed a cross-motion for summary judgment. [dkt. 28]. For the reasons detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 21], denies the Commissioner's motion for summary judgment [dkt. 28], and remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

I.      **Background**

        a.   **Procedural History**

        In July 2016, Plaintiff filed for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 216(i), 223(d), alleging an onset date of disability of July 17, 2015. [Administrative Record ("R.") 192-193.] Plaintiff's claim was initially denied October 11, 2016 and denied again on reconsideration on February 24, 2017. [R. 124-127, 129-131.] Plaintiff requested an

---

[1]    In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

administrative hearing. [R. 132-133.] On March 9, 2018 Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Diane S. Davis. [R. 36-83.] A vocational expert also testified. *Id.* On June 14, 2018 the ALJ issued an opinion finding Plaintiff not disabled. [R. 20-29.] The Appeals Council denied Plaintiff's request for review on April 2, 2019, making the decision the final decision of the Commissioner. [R. 1-5.] Plaintiff timely filed suit pursuant to 42 U.S.C. § 405(g).

### b. Relevant Background

Plaintiff was born in August of 1962 and was 53 years old on her disability onset date. [R. 48.] Plaintiff lived with her fiancé who assisted her with grocery shopping, cooking, and cleaning. [R. 62.] Of the household chores, Plaintiff performed only light cleaning and light dusting. *Id.* Plaintiff's hobbies included walking, playing the drums, and yoga. [R. 1466.] As of March 2018, Plaintiff reported that she stopped playing the drums after injuring her left arm. [R. 63.]

Plaintiff was involved in a motor vehicle accident over 20 years ago that caused neck pain, which became progressively worse in 2013. [*See* R. 382.] Plaintiff complained of neck pain in her cervical spine, difficulty standing for prolonged periods of time, and occasional numbness, tingling and shooting pain in her finger and extremities. [*See* R. 382, 440.] MRI and CT scans taken in August 2013 showed moderate to severe stenosis. [R. 334-340.] After undergoing physical therapy and pain medications, Plaintiff reported continued progression of her symptoms. [*see* R. 354-56.] In November 2013 Plaintiff underwent cervical decompression and fusion surgery. [R. 360-361.]

After the surgery Plaintiff reported that her pain worsened throughout her neck and shoulders despite continued pain medications, trigger point and facet injections, as well as renewed physical therapy. [R. 456, 475, 481-87, 497-539.] Physical therapy notes documented Plaintiff's difficulty sleeping, sitting longer than one hour, standing longer than twenty minutes, computer work, driving and carrying more than five pounds. [R. 497.] These notes also documented Plaintiff's reduced cervical spine range of motion and decreased shoulder strength. [R. 531, 537.] Plaintiff attended fifteen visits of physical therapy from June 04, 2015 through August 27, 2015. [R. 536.] Plaintiff refused further

treatment because she wished to save her therapy benefits for the remainder of the year. *See id.*

Plaintiff's primary care physician, John Obert-Hong, M.D., documented ongoing issues of fibromyalgia, chronic neck pain, migraines, Generalized Anxiety Disorder, and insomnia. [R. 651-653, 646-696, 796-798, 810-816, 862-86, 916-18, 1359-62, 1374-82, 1409-12, 1438-39.] Dr. Obert-Hong treated these symptoms over the course of approximately ten years – in conjunction with other specialists, including rheumatologist Jeanine Connolly, M.D. *See id.* In August 2016, Dr. Obert-Hong and Dr. Connolly completed a physical medical source statement reporting that Plaintiff was limited to walking 3-4 blocks without rest or severe pain, sitting for 30 minutes at a time, and standing for 15 minutes at a time.[2] [R. 674-650 at 648.] The doctors determined that Plaintiff could sit, stand and walk for less than 2 hours total during an 8-hour workday and would require unscheduled breaks. *Id.* In particular, the doctors opined that Plaintiff would require a cane or assistive device while standing or walking, could rarely lift and carry less than ten pounds, and would have significant limitations with reaching, handling, or fingering. [R. 649.] Ultimately, the doctors indicated that Plaintiff was limited to using her hands, fingers, and/or arms for five percent of an 8-hour workday for the following activities: grasping, turning, and twisting objects; fine manipulations; reaching in front of the body; and reaching overhead. *Id.*

Plaintiff also complained of left knee pain. [R. 560.] Plaintiff was referred to Daniel Troy, M.D., orthopedic specialist. *Id.* In September 2015 Dr. Troy administered a left knee cortisone injection. [R. 560-61.] In March 2016 Dr. Troy reviewed the left knee x-rays and MRI results and diagnosed osteoarthritis. [R. 563-65.] Plaintiff voiced renewed complaints of knee pain with Dr. Connolly in July 2016. [R. 654.] Plaintiff described general achiness, sometimes in the elbows, hip, and

---

[2] The medical source statement lists both Dr. Obert-Hong and Dr. Jeanine Connolly (treating rheumatology specialist) as its authors. [R. 647.] Although the document was only signed by Dr. Obert-Hong [R. 650], it appears to the Court to have been authored by both physicians, based on the handwriting at the beginning of the document, the fact that both physicians' progress reports were appended to the statement, and that it purports on its face to be authored by both physicians. [R. 647-650.]

3

knees; although she never saw visible soft tissue swelling. *Id.* Dr. Connolly evaluated Plaintiff's medications prescribed for fibromyalgia and recommended a new medicine, although Plaintiff subsequently had an allergic reaction. [R. 654-57, 800-05.]

In October 2016, Dr. Obert-Hong ordered a cervical spine CT scan which revealed a disc protrusion flattening the ventral thecal sac resulting in possible mild foraminal stenosis – which was not present on Plaintiff's previous MRI from 2014. [R. 767-69.] In February 2017, Steven Mather, M.D. reviewed Plaintiff's MRI from 2013, a follow-up CT scan from 2014, the flexion-extension views from December 2016, and ordered a bone scan. [R. 970.] Dr. Mather reported that Plaintiff still suffered from fairly severe neck pain and noted the possibility of additional surgery. [R. 968.]

Also in February of 2017, Plaintiff received cortisone injections for carpal tunnel syndrome and synovitis on the right side. [R. 981.] In July Plaintiff saw Anton Fakhouri, M.D., at the Hand and Upper Extremity Clinic who reported that the electromyogram results were consistent with moderately severe carpal tunnel syndrome on the right side. [R. 1020.] Plaintiff had positive compression and Phalen's tests bilaterally, decreased strength, finger swelling, and pain with resistance in her wrist, forearm, and middle finger. [R. 1020-21.] Dr. Fakhouri administered injections and prescribed wrist splints. [R. 1021.]

In September 2017, Dr. Fakhouri diagnosed Plaintiff with bilateral elbow lateral epicondylitis, bilateral radial tunnel syndrome, left trigger thumb, and a mass on her left wrist consistent with a ganglion cyst. [R. 1034.] Dr. Fakhouri repeated injections in both elbows, the left radial wrist and left trigger thumb. [R. 1035.] In December 2017, Plaintiff completed a second course of physical therapy for the pain in her upper extremities. [R. 1051-1100, 1112-54.] Plaintiff also continued to seek specialized care from Dr. Connolly for her fibromyalgia and generalized pain. [R. 1383-1402.] In January 2018, Eliot Nacke, M.D. debrided Plaintiff's left elbow. [R. 1181-82.] Two months later, in March 2018, Dr. Nacke performed a debridement on Plaintiff's right elbow. [R. 1490-1509.]

In September 2016, Plaintiff underwent examination by consultative examiner ChukwuEmeka

Ezike, M.D., who noted limited cervical range of motion, an inability to completely squat, and decreased grip strength, although noting a normal ability to grasp and manipulate objects. [R. 743-44.] Dr. Ezike noted that Plaintiff was alert and oriented, her affect was normal, and noted no signs depression, agitation, irritability or anxiety. [R. 744.] In September 2016 Plaintiff was also examined by consultative examiner Ericka Swanson, Psy.D., who noted that Plaintiff was disheveled and unkempt. [R. 747.] During the exam Plaintiff reported that her condition leaves her in bed 12 hours a day, she has trouble concentrating and focusing, and she requires assistance with daily activities such as grocery shopping and cleaning. [R. 748-749.] Dr. Swanson diagnosed Plaintiff with an adjustment disorder, specifying that Plaintiff had both anxiety and depressed mood. [R. 750.] In October 2016, Disability Determination Services ("DDS") agent David Voss, Ph.D., opined that Plaintiff had an adjustment disorder that was not severe, causing mild restriction in activities of daily living and mild difficulties in maintaining concentration, persistence, or pace. [R. 90-91.]

In February 2017, DDS agent Howard Tin, Psy.D., opined that Plaintiff had anxiety and compulsive disorders that caused: mild limitations in her ability to understand, remember and apply information; moderate difficulties in interacting with others; and moderate difficulties with her ability to concentrate, persist, or maintain pace. [R. 107.] Moreover, Dr. Tin noted that Plaintiff had moderate limitations in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; work in coordination with or proximity to others without being distracted by them; and set realistic goals or make plans independently of others. [R. 112-113.]

### c. The ALJ's Decision

On June 14, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 20-29.] Plaintiff alleged disability beginning on July 17, 2015. [R. 20.] At Step One, the ALJ found that Plaintiff had engaged in substantial gainful employment between July 17, 2015 through December

31, 2015.[3] [R. 23.] However, beginning in 2016 the ALJ found there was a continuous 12-month period(s) during which Plaintiff had not engaged in substantial gainful activity.[4] *Id.* At Step Two, the ALJ found that Plaintiff had severe impairments of: degenerative disc disease of the cervical spine; status post fusion surgery; migraine headaches; and fibromyalgia. [R. 23.] The ALJ also detailed Plaintiff's nonsevere impairments of knee pain, left and right elbow epicondylitis, left thumb trigger finger and right carpal tunnel syndrome. [R. 23-24.] Plaintiff was also diagnosed with depression and anxiety in 2015, though the ALJ found these mental impairments were nonsevere, singly and in combination. [R. 24.]

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1, with special consideration to sections 1.04 (spine disorders) and 11.00 (neurological disorders).[5] [R. 26.] Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[6] to perform light work with the following additional limitations: no climbing ladders, ropes, or scaffolds; no work at unprotected heights; avoidance of concentrated exposure to temperature extremes, wetness, and humidity; only frequent bilateral handling, balancing, stooping, kneeling, crouching, crawling, climbing ramps and stairs. *Id.*

At Step Four, the ALJ determined that Plaintiff is capable of performing her past relevant work as an Account Representative – ordinarily performed at the light exertional level, medium as

---

[3] Plaintiff argued that these 2015 earnings after the alleged onset date were from sick leave, vacation pay, and a severance package. However, the ALJ determined Plaintiff received both regular and vacation earnings during this time period – which suggested that Plaintiff worked on some level through December 2015 [R. 23.]

[4] The ALJ found that the earnings in 2016 did in fact reflect the earnings from the severance package, rather than from continued work activity [R. 23.]

[5] While there is no listing for fibromyalgia, the ALJ also considered whether Plaintiff's fibromyalgia symptoms (alone or in combination with other impairments) met or medically equaled the severity of any listed impairment. The ALJ found no medical evidence in the record to indicate that Plaintiff's fibromyalgia contributes to any severe impairment, nor does it equal any listing in 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 26.]

[6] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

performed by Plaintiff (DOT #241.267-034). [R. 29]. The ALJ determined that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. [*Id.*; 20 C.F.R. § 404.1565.] The ALJ determined the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. *Id.* Because of these determinations, the ALJ did not reach Step Five and found Plaintiff not disabled under the Act. *Id.*

## II.     Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the

proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists

when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While

reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the

record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner."

*Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must

nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v.*

*Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the

Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate

discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,

539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III.  Discussion

Among other things, Plaintiff asserts that the ALJ erroneously rejected the opinions of Plaintiff's

treating physician, Dr. Obert-Hong. The Court agrees, for the reasons below.

In making a disability determination, Social Security regulations direct an ALJ to evaluate each

medical opinion in the record. 20 C.F.R. § 416.927(c). The SSA will articulate "how persuasive we find

all of the medical opinions and all of the prior administrative medical findings" in a claimant's case

record. 20 C.F.R. § 404.1520c. An ALJ must provide "good reasons" for how much weight he gives

to a treating source's medical opinion. *See Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009);

20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our…decisions for the weight we give

your treating source's opinion."). When an ALJ decides for "good reasons" not to give controlling

weight to a treating physician's opinion, he must determine what weight to give to it and other available

medical opinions in accordance with a series of factors, including the length, nature, and extent of any

treatment relationship; the frequency of examination; the physician's specialty; the supportability of

the opinion; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*,

758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 416.927(c)(2)-(6). If he does not discuss each factor explicitly, the ALJ should demonstrate that he is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Here, the Court does not believe the ALJ articulated "good reasons" for not giving controlling weight to Dr. Obert-Hong's opinions. Even if there were sound reasons for refusing to give Dr. Obert-Hong's opinions controlling weight, the ALJ still erred by assigning his opinions little weight without considering relevant regulatory factors under 20 C.F.R. § 404.1527(c) (*i.e.*, length, nature, and extent of treatment relationship; opinion's consistency with other evidence; explanatory support for the opinion; and any specialty of the treating physician). *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018); *Scardamaglia v. Colvin*, 2015 WL 9582427, at *4 (N.D. Ill. Dec. 30, 2015) (an ALJ is required to point to specific reasons for rejecting the opinion of a treating physician) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

The ALJ did not address any of the regulatory factors under 20 C.F.R. § 404.1527(c) when assigning little weight to Dr. Obert-Hong's opinions. Dr. Obert-Hong opined that Plaintiff could perform less than a full range of sedentary work. [R. 647-50.] The ALJ declined to afford controlling weight to this treating opinion because Dr. Obert-Hong's treatment notes lacked "accompanying narration" and his opinion was inconsistent with the record overall. [R. 28.] Specifically, the ALJ discounted Dr. Obert-Hong's opinion because Plaintiff's ability to drum was inconsistent with Dr. Obert-Hong's finding that Plaintiff was limited to using her arms and hands for five percent of the average workday. *Id.* However, these reasons fail to constitute substantial evidence, as discussed below.

First, the ALJ failed to explain why Dr. Obert-Hong's opinion was inconsistent with the progress notes and overall record. [R. 28.] The ALJ made the broad assertion that Dr. Obert-Hong's opinion was unpersuasive because there was "no accompanying narration," and it was inconsistent with the record overall. *Id.* Although "by itself a check-box form might be weak evidence, the form

takes on greater significance when it is supported by medical records." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). The absence of detailed treatment notes, without more, is "insufficient grounds for disbelieving the evidence of a qualified professional." *Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014). Although the medical source statement was in a check-box opinion format, Dr. Obert-Hong's records themselves did indeed support his opinions and, in fact, the doctor attached nearly 50 pages of progress notes to the medical source statement in support of his opinions. The attached progress notes reported that Plaintiff complained of generalized pain, as well as difficulty bending over to wash her face and difficulty making a grip with her hands. [R. 651-661.] Diagnostic findings ordered by Dr. Obert-Hong showed signs of cervical spine degeneration with flattening of the thecal sac, and electromyogram findings were consistent with moderately severe right-side carpal tunnel syndrome. [R. 767-69.] Moreover, Dr. Obert-Hong's medical records were not inconsistent with the record as a whole. The findings by consultative examiner Dr. Ezike also showed Plaintiff suffered from limited cervical motion, decreased grip strength, and an inability to squat completely. [R. 743-44.] Dr. Fakhouri at the Hand and Upper Extremity Clinic also reported that Plaintiff had positive compression and Phalen's tests bilaterally, decreased strength, finger swelling, and pain with resistance in her wrist, forearm, and middle finger. [R. 1020-21.] The ALJ failed to explain why Dr. Obert-Hong's opinion from the 2016 medical source statement were inconsistent with these findings and with the record overall.

Next, the ALJ failed to explain why Plaintiff's ability to drum was inconsistent with Dr. Obert-Hong's limitation on Plaintiff using her arms and hands five percent of the workday. [R. 28, 56, 63.] An ALJ must "explain[] his analysis of the evidence with enough detail and clarity to permit meaningful review." *Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012). Here, the ALJ simply stated that "[d]rumming requires constant use of arms, hands, fingers, which contradicts the opinion of the treating source." [R. 28.] Dr. Obert-Hong opined that Plaintiff could use her hands, fingers, and arms for grasping, turning, and twisting – for five percent of an eight-hour workday. [R. 649.] Based on Dr.

10

Obert-Hong's opinion Plaintiff would be limited to use of her hands and arms for 24 minutes during the workday, or roughly 240 minutes over the course of two weeks. The record here is unclear with respect to Plaintiff's drumming, however. The ALJ cited to a report from December 07, 2017 where Plaintiff reported she practiced drumming once a week. [R. 1037.] Yet the following week Plaintiff reported that she "can't play the drums and do other day to day activities." [R. 1038.] The same report stated that Plaintiff "need[ed] help just even getting dressed." *Id.* At the administrative hearing, Plaintiff testified she played the drums as a hobby, once every two weeks for one hour.[7] [R. 56.] To discredit Dr. Obert-Hong's opinion on the basis of contradictory evidence in the record about Plaintiff's ability or inability to drum makes a mountain out of a molehill. *See Childress v. Colvin,* 845 F.3d 789, 792 (7th Cir. 2017) (ALJ erred in considering Plaintiff's ability to walk 30 minutes a day over other limitations supported by the record); *see also Brown v. Colvin,* 845 F.3d 247, 253 (7th Cir. 2016) ("the ALJ substituted his judgment for Dr. Shannon's without explaining why Brown's activities were inconsistent with Dr. Shannon's opinions.").

Notwithstanding, the ALJ was required to assess the weight given to Dr. Obert-Hong's opinion in accordance with the regulatory checklist of factors. *Larson,* 615 F.3d at 751. The ALJ failed to consider the length, nature, and extent of Dr. Obert-Hong's treatment relationship with Plaintiff; the consistency of Dr. Obert-Hong's opinions with other evidence of record; and any medical specialty of Dr. Obert-Hong. *Gerstner*, 879 F.3d at 263. Here the ALJ made passing reference to Dr. Obert-Hong's status as treating physician: "Dr. Obert-Hong, a treating source, opined in August 2016 that the claimant had the capacity for less than the full range of sedentary work." [R. 28.] However, the ALJ failed to consider that Dr. Obert-Hong consistently treated and examined Plaintiff over the entire time span at issue. *See* 20 C.F.R. § 4041527(c)(1)-(c)(2). Furthermore, the ALJ did not consider the supportability of Dr. Obert-Hong's opinion. 20 C.F.R. § 404.1527(c)(3). Dr. Obert-Hong treated

---

[7]  Plaintiff also testified that prior to injuring her left arm she was playing the drums "like twice a month for maybe an hour." [R. 63.]

Plaintiff's symptoms over the course of approximately ten years – coordinating with other specialists, including rheumatologist Dr. Jeanine Connolly, M.D. [R. 651-653, 646-696, 796-798, 810-816, 862-86, 916-18, 1359-62, 1374-82, 1409-12, 1438-39.] The failure of the ALJ to assess the regulatory factors requires remand. *Gerstner,* 879 F.3d at 263; *see also Scrogham v. Colvin,* 765 F.3d 685, 697-698 (7th Cir. 2014) ("The ALJ here should have addressed these factors in her opinion to enable us to review whether she engaged in the correct methodology"). Because these factors were unaddressed, the Court cannot trace the ALJ's reasoning behind the decision to discount Dr. Obert-Hong's opinions and, thus, remand is required for this reason as well.

**IV.    Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 21] is granted; the Commissioner's motion for summary judgment [dkt. 28] is denied.

Entered: 07/16/2020

_____

Susan E. Cox,
United States Magistrate Judge